CHARLES L. ROBERTS (USB No. 5137)
*croberts@wnlaw.com*
JAMES B. BELSHE (USB No. 9826)
*jbelshe@wnlaw.com*
CHAD E. NYDEGGER (USB No. 9964)
*cnydegger@wnlaw.com*
**WORKMAN | NYDEGGER**
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah  84111
Telephone:  (801) 533-9800
Facsimile:     (801) 328-1707

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| LL&L INNOVATIONS LLC, a Utah limited liability company, and LOWDOWN DISTRIBUTION, INC., a California corporation, | Civil Action No.  2:10-cv-00829-DN |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM AND POINTS OF AUTHORITY IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| v. | |
| JERRY LEIGH OF CALIFORNIA, INC., a California corporation; KOHL'S CORPORATION, a Wisconsin corporation; JC PENNEY COMPANY, INC., a Texas corporation; RUSTY NORTH AMERICA, LLC, a California limited liability company; HOT TOPIC MERCHANDISING, INC, a California corporation, and SUN COAST MERCHANDISE CORPORATION d/b/a SUNSCOPE, a California corporation, | Magistrate Judge David Nuffer |
| Defendants. | |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   ARGUMENT ...............................................................................................................2

    A.    Plaintiffs Are Likely To Succeed On The Merits Of Their Claims Of Patent
        Infringement ........................................................................................................3

        1.    Claim Construction ..................................................................................4

        2.    Defendants' Infringing Products Include Each Limitation Of At Least
            Claim 1 Of The '192 Patent ....................................................................5

        3.    Defendants Are Liable For Contributory And Induced Infringement Of
            Claim 1 Of The '192 Patent ....................................................................7

        4.    The Claims Of The '192 Patent Are Valid ................................................8

    B.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF DEFENDANTS
        ARE NOT PRELIMINARILY RESTRAINED AND ENJOINED .....................11

        1.    Loss Of Market Share And Customer Relationships ...............................12

        2.    Price Erosion ...........................................................................................14

    C.    THE BALANCE OF THE HARDSHIPS FAVORS PLAINTIFFS ....................15

    D.    THE PUBLIC INTEREST WILL BE SERVED BY ENJOINING
        DEFENDANTS .................................................................................................16

III.  CONCLUSION ..........................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abbot Labs. v. Sandoz, Inc.,*
  544 F.3d 1341 (Fed. Cir. 2008)..............................................................12

*Altiris, Inc. v. Symantec Corp.,*
  318 F.3d 1363 (Fed. Cir. 2003)................................................................4

*Amazon.com, Inc. v. Barnesandnoble.com,*
  239 F.3d 1343 (Fed. Cir. 2001)............................................................3, 9

*Aro Mfg. Co. v. Convertible Top Replacement Co.,*
  377 U.S. 476 (1964)................................................................................8

*Canon Computer Sys., Inc. v. Nu-Kote Int'l., Inc.,*
  134 F.3d 1085  (Fed. Cir. 1998)...........................................................8, 9

*Catalina Mktg. Int'l v. Coolsavings.com, Inc.,*
  289 F.3d 801 (Fed. Cir. 2002).................................................................3

*CCS Fitness, Inc. v. Brunswick Corp.,*
  288 F.3d 1359 (Fed. Cir. 2002)................................................................4

*Computer Sys., Inc. v. Nu-Kote Int'l Inc.,*
  134 F.3d 1085 (Fed. Cir. 1998)...............................................................9

*DSU Medical Corp. v. JMS Co.,*
  471 F.3d 1293 (Fed. Cir. 2006) (en banc in part)..................................7

*eBay Inc. v. MercExchange, L.L.C.,*
  547 U.S. 388 (2006)..............................................................................12

*Everett Labs., Inc. v. Breckenridge Pharm., Inc.,*
  573 F. Supp.2d 855 (D.N.J. 2008)........................................................15

*H.H. Robertson Co. v. United Steel Deck, Inc.,*
  820 F.2d 384 (Fed. Cir. 1987)...............................................................15

*Hewlett-Packard Co. v. Bausch & Lomb Inc.,*
  909 F.2d 1464 (Fed. Cir. 1990)...............................................................7

*Hybritech Inc. v. Abbott Labs.,*
  849 F.2d 1446 (Fed. Cir. 1988)..........................................2, 12, 15, 17

*Jack Guttman, Inc. v. Kopykake Enters., Inc.*,
    302 F.3d 1352 (Fed. Cir. 2002)............................................................4

*Kegel Co., Inc. v. AMF Bowling, Inc.*,
    127 F.3d 1420 (Fed. Cir. 1997)............................................................3

*Manville Sales Corp. v. Paramount Sys.*,
    917 F.2d 544 (Fed. Cir. 1990)............................................................7

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995)....................................................3, 4, 15

*Oakley, Inc. v. Sunglass Hut Int'l*,
    316 F.3d 1331 (Fed. Cir. 2003)............................................................3

*Oscar Mayer Foods Corp. v. Sara Lee Corp.*,
    743 F. Supp. 1326 (W.D. Wis. 1990)..................................................17

*Pfizer, Inc. v. Teva Pharms., USA, Inc.*,
    429 F.3d 1364 (Fed. Cir. 2005)..........................................................16

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)............................................................4

*Polymer Techs., Inc. v. Bridwell*,
    103 F.3d 970 (Fed. Cir. 1996)......................................................12, 14

*Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*,
    237 F.3d 1359 (Fed. Cir. 2001)............................................................3

*Rexnord Corp. v. Laitram Corp.*,
    274 F.3d 1336 (Fed. Cir. 2001)............................................................4

*Sanofi-Synthelabo v. Apotex, Inc.*,
    470 F.3d 1368 (Fed. Cir. 2006)..........................................................16

*Seachange Int'l Inc. v. C-COR Inc.*,
    413 F.3d 1361 (Fed. Cir. 2005)............................................................3

*Titan Tire Corp. v. Case New Holland*,
    566 F.3d 1372 (Fed. Cir. 2009)........................................................3, 9

*Trell v. Marlee Electronics Corp.*,
    912 F.2d 1443 (Fed. Cir. 1990)............................................................8

*Voile Mfg. Corp. v. Dandurand*,
    551 F. Supp. 2d 1301 (D. Utah 2008) ...................................................3

**STATUTES**

35 U.S.C. § 271 (2009) ...................................................................................................2, 7

35 U.S.C. § 282 (2009) ......................................................................................................8

35 U.S.C. § 283 .................................................................................................................2

Plaintiffs LL&L Innovations LLC ("LL&L") and Lowdown Distribution, Inc. [collectively, "Plaintiffs"], submit this memorandum in support of their motion for a temporary restraining order and preliminary injunction (the "Motion"). Through this motion, Plaintiffs seek to immediately enjoin defendants Jerry Leigh of California, Inc. ("Jerry Leigh"), Kohl's Corporation ("Kohl's"), JC Penney Company, Inc. ("JC Penney"), Rusty North America, LLC ("Rusty"), Hot Topic Merchandising, Inc. ("Hot Topic"), and Sun Coast Merchandise Corp. d/b/a Sunscope ("Sunscope") [collectively, "Defendants"] from making and selling products that infringe Plaintiffs' patent rights.

## I. INTRODUCTION

LL&L is the owner by assignment of U.S. Patent No. 7,519,192 (the "'192 patent"). The '192 patent is titled "Wired Clothing and Earphones" and claims the unique feature of a conductive wire that acts as a draw string for a hooded garment, like a sweatshirt. The '192 patent was filed on September 13, 2005, and was validly issued by the United States Patent and Trademark Office on April 14, 2009. On July 20, 2010, and in exchange for valuable consideration, LL&L licensed the '192 patent (the "License") to three related entities, including Lowdown [collectively "Lowdown"]. [Declaration of Edward Zhou in Support of Motion for Temporary Restraining Order and Preliminary Injunction ("Zhou Decl."), ¶ 3.] Under the License, Lowdown has the right to preclude any additional licenses of the '192 patent to other parties. [*Id.* at ¶ 4.] As such, Lowdown is presently the exclusive licensee of the '192 patent.

On or about July 7, 2010, Lowdown became aware of unlicensed products infringing the claims of the '192 patent being offered for sale by Defendants. [Zhou Decl., ¶ 6.] These infringing products are sold by various retail outlets including Kohl's, JC Penney, and Hot Topic. [Declaration of James T. Burton in Support of Motion for Temporary Restraining Order and Preliminary Injunction ("Burton Decl."), ¶¶ 3-6, and Exhs. A-H.] The products are also sold under various brand names, including the brand name Rusty. [*Id.* at Exh. E.] The specific names of these products vary from retailer to retailer, but include "Hoodie Buddie with HB3 Technology", "Abbey Dawn 'Rock' Striped Hoodie with HB3 Technology", "Hoodie Buddie Fleece", "Wired Series" sweatshirts, and "Skeleton Rose Hoodies" (collectively, "Infringing Products"). [*Id.* at ¶¶ 3-6, and Exhs. A-H.] Each

of these products includes the "HB3 Technology" manufactured by Jerry Leigh that infringes the claims of the '192 patent. [*Id.*]

Jerry Leigh, directly or through its subsidiaries, divisions, groups, or distributors, makes, sells and/or offers for sale or allows others to make, use, sell and/or offer for sale the Infringing Products. Jerry Leigh has authorized Sunscope to market and sell the Infringing Products. [Zhou Decl., ¶ 6.]

Plaintiffs now seek a temporary restraining order and preliminary injunction in order to immediately stop Defendants' infringement of the '192 patent through their manufacture and sale of Infringing Products. Plaintiffs are likely to succeed on the merits of their patent infringement claim, Plaintiffs have and will continue to suffer irreparable harm, the balance of hardships weighs in favor of granting this Motion, and the public interest will be served by an order enjoining Defendants' infringing activities.

## II.   ARGUMENT

"[T]he principal value of [the '192] patent" is the right to exclude others from making, selling, or offering to sell the claimed invention. *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456 (Fed. Cir. 1988); *see* 35 U.S.C. § 271 (2009). Plaintiffs' right to exclude Defendants from making, using, selling, offering to sell, or importing the Infringing Products, which is at the heart of the patent grant, is not readily compensated through monetary damages assessed after litigation. *Hybritech*, 849 F.2d at 1456-57 (Fed. Cir. 1988). Accordingly, 35 U.S.C. § 283 authorizes this Court to protect Plaintiffs' patent rights by issuing a preliminary injunction against Defendants' infringement.

An application for preliminary injunction predicated on patent infringement involves substantive issues unique to patent law, and is therefore controlled by the law of the United States Court of Appeals for the Federal Circuit. *Id.* at 1451 n. 12. When considering a request for a preliminary injunction, four factors are considered: "(1) a reasonable likelihood of success on the merits of [the movant's] infringement claim; (2) irreparable harm if the proposed injunction is not granted; (3) a balance of hardships tipping in [the movant's] favor; and (4) that the injunction will have a favorable impact on the public interest." *Voile Mfg. Corp. v. Dandurand*, 551 F. Supp. 2d 1301 (D. Utah 2008) (citing *Amazon.com, Inc. v. Barnesandnoble.com*, 239 F.3d 1343, 1350 (Fed.

Cir. 2001)).   As will be shown below, Defendants should be temporarily restrained and preliminarily enjoined from making, using, selling, offering to sell, and importing the Infringing Products during the pendency of this case because each of the four factors weighs in favor of Plaintiffs.

**A.      Plaintiffs Are Likely To Succeed On The Merits Of Their Claims Of Patent Infringement**

To establish a likelihood of success on the merits, Plaintiffs "must show that [they] will likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent." *Titan Tire Corp. v. Case New Holland*, 566 F.3d 1372, 1376 (Fed. Cir. 2009).  To do so, Plaintiffs must first show that Defendants' Infringing Products include "each claim limitation [of at least one claim of the '192 patent] either literally or under the doctrine of equivalents."  *Seachange Int'l Inc. v. C-COR Inc.*, 413 F.3d 1361, 1377 (Fed. Cir. 2005) (citing *Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002)).   Plaintiffs' showing must be viewed "in light of the presumptions and burdens that will inhere at trial on the merits," *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001) (internal citations omitted).   At trial, Plaintiffs will be required to show infringement by a preponderance of the evidence.  *Kegel Co., Inc. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1425 (Fed. Cir. 1997).  Defendants, on the other hand, have the burden of proving invalidity by clear and convincing evidence at trial.  *Titan Tire Corp. v. Case New Holland*, 566 F.3d 1372, 1377 (Fed. Cir. 2009).

In evaluating Plaintiffs' likelihood of success on its infringement claim, the Court must conduct the same two-step infringement analysis that it would conduct at a later stage of litigation. *See Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003).  First, the Court must construe or determine the scope and meaning of the claim at issue.  *Id.*; *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) (holding claim construction a question of law).  Second, the Court must compare the construed claim to the accused product to determine whether the product meets each of the claim limitations.  *Oakley,* 316 F.3d at 1339; *see also CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1365 (Fed. Cir. 2002).  At the preliminary injunction stage, the Court need not issue a final claim construction but can instead

"engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002).

### 1.    Claim Construction

To construe Claim 1 of the '192 patent, the court begins with the language of the claim. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1341 (Fed. Cir. 2001). In the absence of an express intent to impart a novel meaning to a claim term, a "heavy presumption" exists that the term carries its ordinary meaning to one of ordinary skill in the art. *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003); *CCS Fitness*, 288 F.3d at 1366. Thus, for example, Claim 1 of the '192 patent means "what one of ordinary skill in the art at the time of the invention would have understood [it] to mean." *Markman*, 52 F.3d at 986. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). Such is the case with claim 1 of the '192 patent. Because the meaning of the claim language of claim 1 is unambiguous and not currently in dispute, the Court does not need to ascribe any particular meaning to the claim terms, particularly at this early stage of the proceedings. Thus, for purposes of assessing Plaintiffs' likelihood of success on the issue of infringement, the Court need only compare the claim language as commonly understood and explained in the specification to the Infringing Products.[1]

---

[1] Plaintiffs expressly reserve the right to request the Court to construe terms and phrases in claim 1, or any other asserted claims, as this action progresses, particularly if Defendants raise claims or defenses based on claim construction issues.

**2.**     **Defendants' Infringing Products Include Each Limitation Of At Least Claim 1 Of The '192 Patent**

Each and every limitation of claim 1 is literally present in the Infringing Products.  The table below provides an infringement analysis of an exemplary Infringing Product[2] that Plaintiffs have identified: the "Hoodie Buddy with HB3 Technology" sweatshirt.  The "Hoodie Buddy with HB3 Technology" sweatshirt is manufactured and sold by Jerry Leigh.  Not only does the "Hoodie Buddy with HB3 Technology" sweatshirt (shown in the right column of the table below) contain each of the elements recited in claim 1 of the '192 patent (which appear in the left column of the table below), but the elements are positioned in a virtually identical manner to a disclosed embodiment of the '192 patent (see Figure 1 of '192 patent).

| '192 PATENT, CLAIM 1 | INFRINGING PRODUCT: HOODIE BUDDIE WITH HB3 TECHNOLOGY |
|---|---|
| A combined garment and earphones, comprising: a garment having a hood sized to be selectively worn over a user's head, the hood including an elongate internal passageway along the border of the hood, and having left and right apertures at each end of the passageway; |   The "elongate internal passage along the border of the hood" is identified by the dashed line, which has been added for identification purposes.  The "left and right apertures at each end of the passageway" have been identified with circles where the drawstring exits the border of the hood. |

_____

[2] There are no material differences between the various Infringing Products that are relevant to infringement of claim 1 of the '192 patent.  [*Compare* Burton Decl. at Exh. C *with* Burton Decl. at Exhs. A, E and G.]

| '192 PATENT, CLAIM 1 | INFRINGING PRODUCT: HOODIE BUDDIE WITH HB3 TECHNOLOGY |
|---|---|
| Earphones, comprising: a conductive wire assembly passing through the elongate internal passageway and having left and right lengths of wire exiting through the left and right apertures, respectively, wherein at least a portion of the conductive wire assembly is slideable within the passageway, and acts as a drawstring for the hood; |  The conductive wire attached to the earphones (shown below) passes through the drawstrings, through the left and right apertures, and through the entire elongate passageway around the border of the hood. When the drawstrings are pulled, the conductive wire slides within the passageway of the hood to draw the border of the hood inward, as shown above. |
| a left and a right earpiece configured to be worn in close proximity to the left and right ears of the user, the earpieces being electronically coupled to the left and right lengths of wire, respectively, and including transducers for emitting audio into the ears of the user; |  Each of the left and right drawstrings terminates in an earpiece that includes transducers for emitting audio into the ears. This particular configuration of earphones is commonly known as an "earbud," and is designed to be inserted in the left and right ears, respectively, of the wearer for the purpose of listening to audio. |

| | |
|---|---|
| and a connection between the earphones and an audio device for supplying an audio signal from the audio device to the earphones. | The connection to the audio device is in the form of a plug located in the pocket of the sweatshirt  |

Each element of claim 1 of the '192 patent is literally present in the "Hoodie Buddy with HB3 Technology" Infringing Product. Any argued deviation from the demonstrated literal infringement would infringe under the doctrine of equivalents. Plaintiffs have established the strong likelihood that they will be successful in proving that Defendants infringe at least claim 1 of the '192 patent.

### 3. Defendants Are Liable For Contributory And Induced Infringement Of Claim 1 Of The '192 Patent

In addition to Defendants' direct infringement, Defendants are also liable for induced and contributory infringement of claim 1 of the '192 patent. 35 U.S.C. § 271(b) provides that "whoever actively induces infringement of a patent shall be liable as an infringer." A defendant is liable for induced infringement if the defendant has an "actual intent to cause the acts which constitute the infringement." *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990). Induced infringement is established if it is shown that the defendant "knew or should have known his actions would induce actual infringements." *Manville Sales Corp. v. Paramount Sys.*, 917 F.2d 544, 553 (Fed. Cir. 1990); *DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1304-07 (Fed. Cir. 2006) (en banc in part). Here, the Infringing Products contain each and every element of the claim 1 as set forth above. Defendants each also undeniably intend and instruct consumers to attach an audio device to the connection located in the pocket of the Infringing Products for supplying audio to the earphones.

With regard to contributory infringement, section 271(c) defines contributory infringement as selling, offering to sell, or importing:

> [A] component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use . . . .

Thus, a defendant is liable as a contributory infringer if the defendant sells individual, unassembled components that are material parts of the claimed invention and which have no other substantial use except as part of the invention.  Such is the case here.  There is no substantial non-infringing use for the earphones in the drawstrings of the Infringing Products other than to connect the earphones to an audio device for supplying audio to the earphones.  Whereas each of the Defendants know of the '192 patent and know that attaching an audio device to the connector in the pocket of the Infringing Products to supply audio to the earphones potentially infringes at least claim 1 of the '192 patent, Defendants are liable for contributory infringement of claim 1.  *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488-90 (1964); *Trell v. Marlee Electronics Corp.*, 912 F.2d 1443, 1447 (Fed. Cir. 1990).

Because Defendants both supply the Infringing Products, which have no substantial non-infringing use, to consumers and instruct consumers to use the Infringing Products to infringe claim 1 of the '192 patent, which consumers in fact do, Defendants are liable for both contributory and induced infringement of claim 1.  Thus, Plaintiffs are likely to succeed on their infringement claims against Defendants.

### 4.    The Claims Of The '192 Patent Are Valid

The claims of the '192 patent are presumed valid.  *See* 35 U.S.C. § 282 (2009); *Canon Computer Sys., Inc. v. Nu-Kote Int'l., Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998).  "[A] patent enjoys the same presumption of validity during preliminary injunction proceedings as at other stages of litigation."  *Titan Tire*, 566 F.3d at 1377 (citing *Canon Computer Sys., Inc. v. Nu-Kote Int'l Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998)); *see also* 35 U.S.C. § 282.  Defendants cannot overcome this

presumption unless they can demonstrate "substantial questions of invalidity," which is viewed through the clear and convincing evidence standard Defendants must carry at trial. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1358 (Fed. Cir. 2001); *see also Canon Computer Sys.*, 134 F.3d at 1088 (internal citations omitted) (because "a patent is presumed valid, and this presumption exists at every stage of the litigation…where the challenger fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue").

The only validity argument articulated by Defendants to date is an allegation that website advertisements for the O'Neil "Hub" jacket invalidate the claims of the '192 patent. [Burton Decl., ¶ 7 and Exh. I.] The most glaring deficiency of the Hub jacket website, however, is that it fails to teach a conductive wire that is slideable within a passageway and that acts a drawstring, as required by claim 1 of the '192 patent. Defendants have not produced any evidence tending to show that the conductive wires of the Hub jacket are slideable in a passageway and act as drawstrings, much less any evidence that could possibly rise to the clear and convincing standard Defendants must carry at trial.

Indeed, the claims of the '192 patent were allowed over similar art cited by the responsible examiner during prosecution of the application that ripened into the '192 patent. During prosecution, the examiner, who is specifically trained to evaluate the validity of patent claims over prior art, cited U.S. Patent No. 6,792,124 and 6,707,922 (both issued to Tilbury *et al.*) [the "'124 patent" and "'922 patent" respectively]. [*See* Burton Decl., Exhs. K and L.] Figures 3 and 5 of the '124 patent are strikingly similar to the Hub reference, as shown below:

Tilbury Figure 5                          Picture of Hub Product





FIG. 5

Tilbury Figure 3                          Picture of Hub Product





FIG. 3

As shown above, the earphones in '124 patent exit the garment in a manner similar to that of

the Hub reference.  Also shown above, and of particular importance here, are the pictures showing

how the conductive wiring of the '124 patent and the Hub product are configured for routing through

the garment.  In both references, the conductive wiring that is located within the garment is integrated with a fabric or webbing that is secured to the garment, thereby preventing the conductive wiring from being able to slide within a passageway of the garment.  Further, the '922 patent teaches earphones being used in connection with a hooded garment.  [*See* Burton Decl., at Ex. L.]  The teachings of these references, alone, render the Hub references duplicative, and even less relevant, that the art already overcome by the claims of the '192 patent during prosecution.  Further, Defendants must demonstrate invalidity by clear and convincing evidence, a much higher burden than what the patent examiner had to demonstrate to reject the claims during prosecution of the '192 patent.  Thus, the Hub references are incapable of invalidating claim 1, or any other claim, of the '192 patent.

Indeed, during prosecution of the '192 patent, the patent examiner concluded that allowance of the claims of the '192 patent over the '124 and '922 patents, among other cited references, was appropriate because:

> Claim 1 discloses the unique feature of having a conductive wire slideable through the passageway, and acting as a drawstring for a hooded garment.  The closest prior art fails to teach a slideable conductive wire that acts as a drawstring for a hood.

[Burton Decl., Exh. M.]

Neither the prior art cited during the prosecution of the '192 patent nor any of the prior art that Defendants have identified, including the O'Neil Hub jacket, have this unique feature.  Absent Defendants' ability to identify this feature in the prior art, Defendants have failed to raise substantial questions of invalidity, and Plaintiffs have thus satisfied their burden of proving a likelihood of success on the merits with respect to the issue of validity.

### B. PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF DEFENDANTS ARE NOT PRELIMINARILY RESTRAINED AND ENJOINED

Defendants' infringement during the pendency of this case will cause Plaintiffs to suffer irreparable harm.  In determining whether to issue a preliminary injunction, the Court is to assess irreparable harm using "traditional principles of equity."  *See eBay Inc. v. MercExchange, L.L.C.*, 547

U.S. 388, 393-94 (2006); *see also id.* at 395 (Roberts, C.J., concurring); *id.* at 396 (Kennedy, J.,

concurring).

As indicated above, it is well settled that the right to exclude is at the heart of a patent grant

and that post-litigation monetary damages may never adequately compensate the loss of this right.

*Hybritech*, 849 F.2d at 1456-57. Generally, a court cannot erase the effects that the presence of an

infringing product has had in distorting the marketplace in the infringer's favor:

> Competitors change the marketplace. Years after infringement has begun, it may be
> impossible to restore a patentee's . . . exclusive position by an award of damages and
> a permanent injunction. Customers may have established relationships with infringers.
>  The market is rarely the same when a market of multiple sellers is suddenly converted
> to one with a single seller by legal fiat.

*Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996).

Courts historically have recognized that continued infringement during the course of litigation

can result in numerous irreparable harms. Such harms include the patentee's or his licensee's loss of

market share, revenue, goodwill, sales, business opportunities and relationships with customers, price

erosion, and the infringer's corresponding ability to obtain market opportunities and develop

customer relationships with infringing technology. *See, e.g., Ebay,* 547 U.S. at 395 (customers

establishing relationships with the infringer); *Abbot Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1361-62

(Fed. Cir. 2008) (patentee's loss of market share, revenue, market opportunities, goodwill, and price

erosion are irreparable); *Hybritech*, 849 F.2d at 1456 (patentee's loss of opportunities to use patent

rights to establish market position and create business relationships).

These forms of irreparable harm have already occurred or are imminent in this case. It is

impossible to foresee and compensate monetarily the long-term effects of Defendants' infringement if

Defendants are not preliminarily enjoined.

### 1.       Loss Of Market Share And Customer Relationships

Plaintiffs stand to irreparably lose a significant portion of the market if Defendants are not

enjoined. Presently, Jerry Leigh is selling Infringing Products to a wide variety of retail outlets, some

of which are named as defendants in this case. Whereas Lowdown's release of its products covered

by the '192 patent is imminent but has not yet occurred [Zhou Decl., ¶ 5,] Jerry Leigh's current sale

of Infringing Products is snatching up the market for these products before the rightful owner of this technology has placed its product on the market.  This preemptory strike by Defendants is the source of numerous irreparable harms.

For example, Defendants are obtaining the benefit and allure of introducing a new, unique and innovative product.  The prestige of being the first to introduce a new product for the first time carries a mystique for both retailers and consumers that enhances the ability to sell the product. [Zhou Decl., ¶ 7.]  One of the most significant competitive advantages in the clothing and apparel industry is to be the first and only supplier of a new product.  [*Id.*]  A product may be a huge success or an abysmal failure depending on how the product is marketed and to whom it is marketed upon its release.  [*Id.*]  Once a product has been introduced to a particular distributor or retailer, a second-comer marketing a comparable product is at a significant disadvantage because the product has lost its mystique in the eyes of distributors and retailers that have already been previously pitched on the product.  [*Id.*]  Thus, it is much more difficult for second-comers in this industry to secure distribution and retail space for its products as compared to the entity that first introduces a product. [*Id.*]  Further, marketing a product to a low-price or discount retailer may affect the image of the product such that high-end retailers will no longer carry the product.  [*Id.*]  There is also significant leverage in being the sole source of a new product.  Those advantages rightfully belong to Plaintiffs as the holders of the patent rights, not Defendants.  The loss of these competitive advantages, prestige, reputation as the innovator, and mystique cannot be quantified or compensated with money damages.

Defendants, and Jerry Leigh in particular, are also establishing relationships with distributors and retailers to carry the infringing products before Plaintiffs have an opportunity to compete for those relationships.  Indeed, Defendants have launched a massive advertising campaign and are flooding the market with its Infringing Products.  [Zhou Decl., ¶ 8.]  Once Jerry Leigh and other Defendants establish relationships to distribute and sell products infringing the '192 patent, it will difficult and expensive, if not impossible, for Plaintiffs to establish relationships with those entities for

the distribution of its patented products.  [*Id.*]  The loss of these ongoing relationships is an irreparable loss, not compensable by money damages.  [*Id.*]

     **2.**      **Price Erosion**

Defendants are also eroding the price that Plaintiffs can charge for their patented products. Defendants are currently setting the price point for the Infringing Products before Plaintiffs have entered the market with their patented products.  As the Federal Circuit has long held, once infringers have set a price point for a particular product and established that price in the minds of consumers, the market is changed and it can be impossible for the rightful patent holder to later raise the price of those products.  *See Polymer Techs.*, 103 F.3d at 975-76.

The clothing and apparel industry is also incredibly price sensitive.  [Zhou Decl., ¶ 9.]  Once a price for a product in this industry has been established in the minds of distributors, retailers, and/or consumers, it is virtually impossible to later sell that product at an increased price.  [*Id.*]  Products in this industry typically garner the highest prices when they are first introduced, and then the price decreases over time.  [*Id.*]  Thus, the first entity to introduce a product typically secures a higher profit per product than subsequent competitors selling comparable products.  [*Id.*]  Additionally, because these types of products are so price sensitive, a company paying even a modest royalty on a product is at a significant competitive disadvantage compared to other parties that are not paying a royalty.  [*Id.*]  For the products covered by the '192 patent at issue in this Action, the royalty paid per product by Lowdown can be the difference in securing or losing a contract, and if a contract is secured, can represent a significant percentage of the net profit on that product for Lowdown.  [*Id.*] Thus, even in cases where Lowdown is able to secure contracts to distribute and sell its products covered by the '192 patent, it will have significantly less resources to put back into additional advertisements, marketing and sales activity to generate additional sales of its patented products as compared to those who are not paying a royalty.  [*Id.*]  Because the loss of these profits trickles down and impacts future sales of the product, it is not possible to ascertain or quantify the total impact this competitive disadvantage will have on the ultimate sales figures for Lowdown's patented products.

Plaintiffs have been and will continue to be irreparably harmed if Defendants are allowed to continue to sell Infringing Products. The loss caused by this usurpation of rights cannot be calculated and is not subject to being compensated with money damages.

## C.   THE BALANCE OF THE HARDSHIPS FAVORS PLAINTIFFS

The balance of hardships in this case favors Plaintiffs. LL&L and Lowdown have both invested significantly in the technology claimed in the '192 patent. For example, Lowdown has paid valuable consideration in exchange for a license to practice the '192 patent. In contrast, Defendants have merely copied the '192 patent, used the unique technology claimed therein to compete unfairly and interfere with the Plaintiffs' potential business opportunities, and have done so without the financial burden of paying for the patent rights.

Plaintiffs' clear showing of a likelihood of success on the merits of its infringement claim against Defendants and the irreparable harm Plaintiffs face from Defendants' ability to market their Infringing Products during this litigation strongly tips the equities in the Plaintiffs' favor. "The magnitude of the threatened injury to the patent owner is weighed, in the light of the strength of the showing of likelihood of success on the merits, against the injury to the accused infringer if the preliminary decision is in error." *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987) (*overruled by Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) on other grounds). "In instances where the patent owner will suffer diminution in the value of its patent, the balance of hardships weighs in the owner's favor." *Everett Labs., Inc. v. Breckenridge Pharm., Inc.*, 573 F. Supp.2d 855, 870 (D.N.J. 2008).

Moreover, to the extent the facts concerning this factor are close between the Plaintiff and Defendants (which is not the case for the reasons shown above), the law requires that this factor be resolved in Plaintiffs' favor. In other words, the Court does not need to find that the balance of hardships clearly tips in Plaintiffs' favor to grant an injunction. *See Hybritech*, 849 F.2d at 1457-58 (affirming preliminary injunction where district court "considered the balance of hardships between the parties and concluded that 'neither party has a clear advantage'"). The Court needs only find that the balance does not tip decidedly in Defendants' favor. *See id.* Indeed, the Federal Circuit has

affirmed the grant of a preliminary injunction even when the injunction threatened to put the alleged infringer out of business. *See, e.g., Bell & Howell*, 132 F.3d at 708 ("[T]he fact that [the defendant] is 'small' and could be put out of business if a preliminary injunction issues does not insulate it from the issuance of a preliminary injunction if the other three preliminary injunction factors are sufficient to tip the scale in [the patentee's] favor[.]"). Here, Defendants are large and all sell numerous other products that do not infringe the '192 patent and will not be in danger of going out of business should a preliminary injunction issue.

In this case, the equities clearly favor the issuance of a preliminary injunction. Plaintiffs have described how Defendants' exploitation of Plaintiffs' patented technology has and will continue to result in irremediable loss of some or all of the market opportunities arising from Plaintiffs' position in the market. The continued marketing and sale of Defendants' Infringing Products, which Defendants presumably expended little to no resources to design or develop, greatly diminishes Plaintiffs' ability to reap the rewards of its investment in innovative technology.

Any harm to Defendants resulting from the issuance of a preliminary injunction is comparatively slight compared to that which Plaintiffs have and will continue to suffer if a preliminary injunction is not granted.

### D.   THE PUBLIC INTEREST WILL BE SERVED BY ENJOINING DEFENDANTS

The fourth factor, "public interest," also weighs in Plaintiffs' favor. The fundamental purpose of the patent grant, and its right to exclude, provides the desired motivation for inventors to invest in socially desirable innovations. *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383-84 (Fed. Cir. 2006). An injunction does no more than protect that vital societal interest. *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1382 (Fed. Cir. 2005) ("[a] preliminary injunction that enforces a valid patent against an infringer 'does no more than further public policy inherent in the patent laws designed to encourage useful inventions by rewarding the inventor with a limited period of market exclusivity.'" (citation omitted.)). Indeed, failure to issue preliminary injunctive relief against an

infringer transgresses that interest. *Oscar Mayer Foods Corp. v. Sara Lee Corp.*, 743 F. Supp. 1326, 1333 (W.D. Wis. 1990).

In this case, Lowdown has obtained the requisite permission in the form of a license to make and sell products covered by the '192 patent. Lowdown has paid valuable consideration in exchange for that permission. Defendants, on the other hand, are attempting to exploit the benefits of technology to which they contributed nothing and that they are not entitled to use. Failure to enjoin such conduct diminishes the incentives that innovators rely upon to continue serving the public with beneficial technological contributions.

An infringer can overcome the strong public interest in protecting intellectual property rights in the rare case in which "some critical public interest" exists "that would be injured by the grant of preliminary relief"—for example, where granting the injunction would, by precluding sales of infringing products, adversely impact the public health or welfare. *See Hybritech*, 849 F.2d at 1458. The circumstances here, however, do not present such a rare case.

## III.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court grant its motion for a temporary restraining order and preliminary injunction and enjoin Defendants from infringing the '192 patent by making, using, selling, offering for sale or importing Infringing Products.

DATED this 20th day of August, 2010.

WORKMAN | NYDEGGER

By */s/ James B. Belshe*
            CHARLES L. ROBERTS
            JAMES B. BELSHE
            CHAD E. NYDEGGER

Attorneys for Plaintiffs
LL&L INNOVATIONS LLC and
LOWDOWN DISTRIBUTION, INC.